UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re                                                    )
                                                         )
LINDA J. NOFZIGER,                                       )      Case No.  6:04-bk-09253-KSJ
                                                         )      Chapter 7
                  Debtor.                                )
                                                         )

MEMORANDUM OPINION PARTIALLY GRANTING
DEBTOR'S MOTION FOR CONTEMPT AGAINST CREDITOR,
MITCHELL KALMANSON, AND RESERVING RULING ON SANCTIONS

Linda Nofziger, the debtor in this recently converted Chapter 7 case, asks that this Court hold one of her creditors, Mitchell Kalmanson, in contempt for failing to protect sealed and confidential information as ordered by this Court (Doc. No. 186).  The debtor also seeks sanctions from Kalmanson for his misconduct.  The Court finds that Kalmanson indeed has committed contemptuous acts but, because the orders he violated are currently on appeal, the Court will reserve ruling on the award of any sanctions pending the decision of the appellate court.

To say the history between the debtor and Kalmanson is contested is an understatement. The litigation between these parties pre-dated this bankruptcy case.  The issues between them largely revolve around the propriety of Nofziger's actions in connection with the divorce case between Kalmanson and his former wife, Donna Robinson.  Kalmanson asserts that the debtor improperly interfered with this divorce action and took possibly criminal acts in an attempt to assist the former Mrs. Kalmanson in the family dispute.

In any event, Kalmanson filed a lawsuit in the Florida state courts against the debtor as well as Nancy Adams, another friend of his former wife. The state court complaint alleged various criminal actions and included counts for civil conspiracy, defamation, and interference with Kalmanson's parent-child relationship.  As this litigation progressed and as Ms. Nofziger's

financial condition declined for unrelated reasons, including a divorce of her own, she eventually filed a Chapter 13 reorganization case on August 12, 2004. Nancy Adams also later filed a Chapter 7 case of her own on March 31, 2005, Case No. 6:05-bk-03222-KSJ.

As occurs in every bankruptcy case, a meeting of creditors was conducted by the assigned trustee. 11 U.S.C. § 341. At this meeting, held on September 16, 2004, the debtor was present with her attorney. Kalmanson also attended the meeting with his attorney, who asked a number of questions. The questions generally sought information about the debtor's prior identities.

In the past, Nofziger had the assistance of the federal government in obtaining a new identity due to alleged, extreme domestic abuse. The debtor argued that disclosure of her prior identity could result in physical harm to her and to her two daughters. Accordingly, based upon the questions asked by Kalmanson at the meeting of creditors seeking disclosure of this confidential information and concern for her and her children's safety, the debtor promptly filed a motion under seal requesting that the transcript of the meeting be sealed (Doc. No. 14).

A hearing was held on this motion on September 20, 2004.[1] The motion was partially granted, and an order was entered on October 8, 2004 (the "October 2004 Order") (Doc. No. 31). In the October 2004 Order, the Court found that "there is an overriding public policy issue wherein the Debtor is a recipient of a new identity as of September 1999 (pursuant to a federal witness protection program) and as such is entitled to the confidentiality of that identity prior to the date it was obtained" and that "the detriment to the Debtor would be substantial if her prior identity were to be imprudently revealed. The Court is therefore compelled to take whatever action possible and within its power to meet the goal of protecting that identity."

---

[1] Although attendance at this hearing was "closed," insofar as only the movant and her counsel were present, no party requested that the record of this hearing be sealed, and, as such, the later produced transcript of it is not sealed or confidential.

In twelve years on the bankruptcy bench, this Court has never entered an order of this kind. The order, however, is consistent with the Order Sustaining Objection to Deposition Questions Concerning Linda Nofziger's Background, entered by the Florida state court in the Kalmanson divorce action on March 10, 2003 (Debtor Ex. No. 8). In that order, the Florida judge found that "Linda Nofziger is involved in a federal program to protect victims of domestic violence and their families. Revealing the information that was required in her deposition on January 22, 2003 [requested by Kalmanson] could endanger her, the children, and her husband."

In order to protect the confidentiality of the information disclosed at the debtor's meeting of creditors, the October 2004 Order directed the United States Trustee, who maintains the audio-tapes and transcripts of bankruptcy meetings of creditors, to seal the record of the debtor's meeting of creditors, "subject to the right of any party and [sic] interest to request access to it." The order further provided that any party requesting access to the transcript of the meeting "shall move for an order of the court granting such access…In other words, the § 341 proceeding is sealed subject to request, and only upon a showing of need and relevance in light of this order." (Doc. No. 31, p. 1).

The October 2004 Order plainly and simply established an easy procedure to obtain the transcript of the meeting of creditors, if it became needed and was relevant. The order was served on all creditors and parties in interest, including Kalmanson and his attorney (Doc. No. 32). However, to date, no party has followed through with the procedures set forth in this order

to obtain a copy of the transcript of the debtor's meeting of creditors (the "Sealed Transcript"). [2] As such, the Court is not privy to the exact discussion that occurred; however, without dispute, the debtor's protected former identity was disclosed and discussed.

The October 2004 Order also contained additional provisions designed to protect the debtor and her family. Specifically, the order provided that the debtor "does not have to answer any question or inquiry, nor provide any information of any kind concerning herself, her family or her finances prior to September 1999." Similar to the procedures relating to the release of the Sealed Transcript, the October 2004 Order provided a method for parties to obtain information about the debtor prior to September 1999, if needed. Kalmanson recently has filed such a motion, his Motion for Relief from Seal Order (Doc. No. 228), which shall be addressed in a separate order.

Lastly, the October 2004 Order directed any party in interest to refrain from exposing any information divulged at the debtor's meeting of creditors. Mitchell Kalmanson and his attorney were specifically included in the list of parties bound by this confidentiality restriction. The Court reserved the right to award sanctions against any party violating the order.

---

[2] To the best of the Court's knowledge, the Sealed Transcript has not been released. At one point, Kalmanson did seek a copy of the Sealed Transcript from the debtor's 341 meeting in connection with his appeal (see discussion of appeal, infra, p. 6) when he filed a Motion to Supplement (Doc. No. 140) his papers on appeal (Doc. Nos. 126 and 127).

In the Motion to Supplement, Kalmanson stated, in paragraph 2, that the Sealed Transcript "was denied and unattainable" referencing a letter, dated July 12, 2005, from Kenneth C. Meeker, the local representative of the Office of the United States Trustee, stating that, as custodian of the audio record, he could not release the tapes without court order. Kalmanson then filed a motion seeking the Sealed Transcript for delivery to the appellate court (Doc. No. 145; See also, Doc. No. 146 and 148). Kalmanson later withdrew this request (Doc. Nos. 175 and 183).

As an aside, because the various withdrawals of pending motions filed by Kalmanson were confusing and did not always directly correlate with the pleadings he filed, a hearing was held, on October 18, 2005, to allow Kalmanson to proceed on any pending motions he did NOT intend to withdraw. He failed to attend this hearing, and the Court entered an order denying all pending motions, concluding that Kalmanson "either intended to withdraw these motions or no longer intended to proceed further in the prosecution of the motions" (Doc. No. 187).

Therefore, the October 2004 Order did three things.  First, the order established a procedure for parties to obtain the Sealed Transcript of the debtor's meeting of creditors.  Second, the order provided that Nofziger need not divulge any information concerning herself, her family or her finances prior to September 1999.  Third, the order directed all parties in interest, specifically including Kalmanson, from disclosing information discussed at the meeting of creditors.  The confidential nature of the debtor's prior identities was the primary information sought to be protected by the October 2004 Order.

Kalmanson clearly had notice of the October 2004 Order insomuch as, upon receiving a copy of the order, he promptly filed a Motion, currently under seal, to Set Aside the Order on Motion Under Seal (Doc. No. 39).  In this motion, Kalmanson asserted that the debtor obtained her new identity under a program established by the Social Security Administration for domestic violence victims and that she exaggerated the degree of violence she encountered in a prior marriage in order to frustrate the legal visitation rights of the debtor's former husband.  After an extensive evidentiary hearing, held on January 6, and 10, 2005, on this motion together with Kalmanson's Motion for Relief from Stay (Doc. No. 24) and Motion to Dismiss (Doc. No. 43), the Court entered an order denying Kalmanson's request to unseal the Sealed Transcript (Doc. No. 66). The transcript of the hearing, containing the Court's Findings of Fact and Conclusions of Law, was sealed, and the written order provided that the October 2004 Order "shall continue to remain in force and effect through the pendency of this bankruptcy absent any further court order" (Doc. No. 66, p. 1).

Shortly after this ruling, on February 14, 2005, Kalmanson filed a Motion, currently under seal, to Amend and for Rehearing and a supporting Memorandum of Law (Doc. No. 69 and 70).  At the hearing held on June 9, 2005 (Doc. Nos. 100 and 108), the Court denied Kalmanson's motion for rehearing, finding no new issue was raised that would justify any rehearing or reconsideration (Doc. No. 114).

Kalmanson, acting pro se, timely appealed this order (and perhaps others) on June 27, 2005 (Doc. No 120). The United States District Court for the Middle District of Florida currently has this appeal under consideration. Therefore, at least one aspect of the pending appeal involves the issue of whether the prior orders of this Court sealing certain information about the debtor's past is appropriate.

However, the debtor now seeks an order of contempt arguing that Kalmanson has violated the terms of the Court's orders (Doc. No**.** 186). The debtor asserts two, separate categories of violations: (i) Kalmanson's release of the sealed information in connection with his appeal, without first obtaining court permission, and (ii) Kalmanson's disclosure of information relating to the debtor's identity prior to September 1999 in two different forums—the Florida state courts and before a grievance committee managed by The Florida Bar.

Kalmanson filed a response (Doc. No. 197) to the debtor's motion for contempt. He argues that, because the pending appeal directly relates to the propriety of the underlying order directing the parties to maintain the confidentiality of the debtor's prior identities, he was required to publicly file the confidential information in order to pursue his appeal. Also, he contends that every filing intended for the appellate court was accompanied by a letter to the clerk of the bankruptcy court directing her attention to the confidential nature of the material sought to be filed. Further, Kalmanson argues that, even if he violated the Court's order directing that he maintain confidentiality, the debtor has suffered no damages.

After continuances requested by the parties, the Court conducted an evidentiary hearing on the motion on January 4, 2006. The same day the debtor converted this case to a Chapter 7 case (Doc. No. 215 and 220).

### Disclosures Made in Connection with Appeal

Kalmanson filed numerous pleadings in support of his appeal, two of which the debtor argues disclosed information in violation of the confidentiality requirement imposed by this

Court in the October 2004 Order. The debtor argues that the first unauthorized disclosure occurred when Kalmanson delivered his Initial Brief on Appeal (Doc. No. 127) (the "Initial Brief") on July 11, 2005, which contained an appendix with specific references to the sealed information. For example, Appendix D to the Initial Brief contains a copy of an opinion issued by an Indiana court referencing the debtor's prior identity in the context of her 1996 divorce case.

Kalmanson argues that when he filed the Initial Brief he attached a letter[3] to the Clerk of the Bankruptcy Court attempting to inform the clerk of the possible confidential nature of some of the material included. Specifically, the letter stated that:

> [the enclosed] documents necessarily contain specific references to the past history and background of the debtor, since that is the purpose of the appeal. This letter draws your attention to the 10/08/04 and 6/15/05 lower court orders, which may or may not have an effect on the filing of the attached documents. I don't know how the lower court can require the appellate court to seal a file, but in order to avoid a problem I am bringing the matter to your attention for whatever action may be appropriate.

(Doc. No. 154, Ex. A). Kalmanson's position is that he had to include the confidential information about the debtor's past as a part of the materials he was required to submit for the record on appeal and that his letter alerting the clerk that the information may be sealed was a good faith attempt to comply with this Court's October 2004 Order.

The debtor argues that the second unauthorized disclosure of sealed, confidential material occurred on September 27, 2005, when Kalmanson filed a pleading titled: Notice to Take Judicial Notice of Arrest Warrant Order Dated 5/1/97 and Voluntary Dismissal of Charges Dated

---

[3] Kalmanson sent a similar letter with other enclosures filed on July 13, 2005 (Doc. No. 154, Ex. C).

11/5/98 (the "Notice") (Doc. No. 165).[4] Attached to this pleading as "Exhibit A" is a copy of the Findings of Fact, Conclusions of Law, Order of Contempt and Judgment which were entered by a state judge in Madison County, Indiana on May 1, 1997. The order addresses visitation, support, and contempt issues involving the debtor in a domestic case when she was using her prior identity.[5]

Therefore, Kalmanson twice divulged protected information in violation of the October 2004 Order, in his Initial Brief (Appendix D) (Doc. No. 127) and in the Notice (Doc. No. 165), without first seeking leave of this Court in direct contravention of the October 2004 Order. True, the Initial Brief was filed with a letter to the clerk asking for confidential treatment; however, the Notice was filed without any such disclaimer or request.

The issue then, is whether pleadings filed in support of an appeal challenging an order imposing a confidentiality requirement can constitute contempt. The conclusion is that contempt can lie in such circumstances because otherwise parties simply could evade orders sealing files by filing an appeal. "It is well established that an order duly issued by a court having subject-matter jurisdiction over a case or controversy before it, and personal jurisdiction over the parties to that case or controversy, must be obeyed, regardless of the ultimate validity of the order." In re Novak, 932 F.2d 1397, 1400 -1401 (11th Cir. 1991) (citing Maness v. Meyers, 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975); United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); United States v. Dickinson, 465 F.2d 496, 509 (5th Cir.1972)). 'People simply cannot have the luxury of knowing that they have a right to contest the correctness of the judge's order in deciding whether to willfully disobey it […]. Court

---

[4] On October 12, 2005, Kalmanson filed a Notice asking to withdraw this pleading as well as numerous other motions filed around the same period of time (Doc. No. 174).

[5] The Court notes that much of this same information is contained in or attached to Kalmanson's Initial Brief.

orders have to be obeyed until they are reversed or set aside in an orderly fashion.'" Novak, 932 F.2d at 1401 (citing Dickinson, 465 F.2d at 509) (other citations and quotations omitted).

A bankruptcy court's authority to exercise powers of civil contempt is well established. In re Maxair Aircraft Corp. of Georgia, Inc., 148 B.R. 353, 358 (M.D.Ga.1992) (citing In re Power Recovery Systems, Inc., 950 F.2d 798 (1st Cir.1991); In re Skinner, 917 F.2d 444 (10th Cir.1990); In re Walters, 868 F.2d 665 (4th Cir.1989)). Such powers are implied under Bankruptcy Code Section 105(a).[6] Maxair, 148 B.R. at 358. In addition, "Bankruptcy Rule 9020 expressly provides that 'Contempt committed in a case or proceeding pending before a bankruptcy judge ... may be determined by the bankruptcy judge' so long as the determination is made at a hearing for which the party subject to sanctions receives sufficient notice." Maxair, 148 B.R. at 358 (citing Bankruptcy Rule 9020(b)).

"In a civil contempt proceeding, the party seeking the contempt bears the initial burden of proving by clear and convincing evidence that the respondent violated a court order." In re Lawrence, 251 B.R. 630, 650 (S.D. Fla. 2000) (citing Commodity Futures Trading Comm'n (CFTC) v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1528 (11th Cir.1992), *cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); In re Shore, 193 B.R. 598, 601 (S.D.Fla.1996)). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure [to comply] on the grounds that he was unable to comply." Lawrence, 251 B.R. at 650 (citing CFTC, 950 F.2d at

---

[6] Bankruptcy Code Section 105(a) provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

1528). To succeed on an inability or impossibility defense, an alleged contemnor must "go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." CFTC, 950 F.2d at 1529 (internal citations and quotations omitted).

In the Eleventh Circuit, the requirement of establishing that one has made in good faith all reasonable efforts to comply with the order is strictly construed. N.L.R.B. v. Triple A Fire Protection, Inc., 2002 WL 987269 (11th Cir. 2002); Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 984 (11th Cir. 1986). A showing that the efforts made to comply were "substantial," "diligent" or "in good faith" alone is insufficient to rebut a prima facie showing of contempt if the contemnor did not make "all reasonable efforts" to comply. Combs, 785 F.2d at 984. Indeed, the use of a "some effort" standard for measuring the strength of the defense would be an abuse of discretion." Id. (internal citations, quotations and brackets omitted). "If the alleged contemnor makes a sufficient showing of impossibility, the burden of proving ability to comply then shifts to the party seeking to show contempt." Lawrence, 251 B.R. at 650 (citing CFTC, 950 F.2d at 1528).

A bankruptcy court can "sanction those who violate its orders if the sanction imposed is designed to compensate the party in whose favor the court's order ran for the harm caused by the offending party." In re Lickman, 288 B.R. 291, 293 (Bankr. M.D. Fla. 2003) (citing e.g., Jove Engineering, Inc. v. Internal Revenue Service, 92 F.3d 1539, 1559-60 (11th Cir.1996); In re Mroz, 65 F.3d 1567, 1575 (11th Cir.1995)). A bankruptcy court can also "impose sanctions designed to coerce compliance with its orders." Lickman, 288 B.R. at 293 (citing e.g., Lawrence v. Goldberg (In re Lawrence), 279 F.3d 1294, 1297 (11th Cir.2002); Jove Engineering, 92 F.3d at 1557-59). A bankruptcy court cannot, however, "use the contempt sanction as punishment for violating the court's orders." Lickman, 288 B.R. 291, 293 (citing Jove Engineering, 92 F.3d at 1558 ("distinguishing punitive aspect of contempt as punitive and criminal if it is imposed

retrospectively for a completed act of disobedience") (quoting International Union v. Bagwell, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994))).

Applying the legal standard articulated above to the facts here, the debtor has made a prima facie showing that Kalmanson violated the letter and spirit of this Court's October 2004 Order when he filed the Initial Brief and the Notice. Both pleadings clearly disclosed sealed, confidential information about the debtor's prior identity falling within the protective ambit of the October 2004 Order, specifically, paragraph 5 of that order, which provided that "[a]ny party in interest in this matter is directed to refrain from exposing any information divulged at the §341 proceeding September 20, 2004, *as well as to refrain from disclosing the nature of, or actual information sought.*" (*emphasis added*). The debtor's prior identity was revealed in Appendix D to the Initial Brief.

The letter to the Bankruptcy Court Clerk is in no way a mitigating factor. Rather, the letter was merely a thinly veiled attempt to couch the prohibited disclosure as a necessary evil in order to designate the record on appeal. Kalmanson would have this Court believe that he could not comply with the October 2004 Order because he had to include the confidential information in order to properly proceed with his appeal. Assuming arguendo that the confidential information concerning the debtor's past is relevant to Kalmanson's appeal, he could have, and indeed was required by the explicit terms of the October 2004 Order, to first seek leave of this Court to include the confidential information in his appellate designation or to otherwise shield the confidential information from the public at large. The Court, if properly requested, could have sealed the information to prevent public disclosure, as it has done numerous times in this case. Instead, Kalmanson chose to affirmatively disclose the sealed information by attaching it to his Initial Brief. He does not even come close to showing that he made "all reasonable efforts" to meet the terms of the October 2004 Order.

The same is also true in regards to the disclosure made by Kalmanson when he filed the Notice with the order of the Indiana state court attached as Exhibit A. The filing of this information by Kalmanson, out of the blue, effectively serves to notify anyone interested of the debtor's prior identity and circumstances. Moreover, in this instance, Kalmanson did not even attach any explanatory letter to the Clerk of the Bankruptcy Court mentioning the sensitive nature of the materials he filed, as he had done when he filed his Initial Brief.[7] Rather, this time, he ignored the October 2004 Order entirely. Kalmanson cannot seriously assert that he was unable to comply with the terms of the October 2004 Order as a defense when he made absolutely no effort to comply whatsoever.

Nor is the fact that Kalmanson is acting pro se or that he filed a letter with at least one of the two contemptuous pleadings a defense. Generally speaking, pleadings filed pro se are liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. Giddens v. Head, 2005 WL 2810710, *1 (M.D. Fla. 2005) (citing Trawinski v. United Techs., 313 F.3d 1295, 1297 (11th Cir. 2002) (citation omitted)). "However, the lenient standard afforded to a pro se litigant does not exempt the pro se litigant from complying with any relevant substantive law and procedural rules." Giddens, 2005 WL 2810710, *1 (citing Sanders v. Daniel, Inc., 151 F.R.D. 138, 139 (M.D.Fla.1993)). "One who proceeds pro se with full knowledge and understanding of the risks involved acquires no greater rights than a litigant represented by a lawyer." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (citing United States v. Pinkey, 548 F.2d 305, 311 (10th Cir. 1977)).

---

[7]  Indeed, Kalmanson introduced five separate letters (Kalmanson's Exhibit Number 1-5) that he argues accompanied pleadings filed with the bankruptcy court. However, none of the letters were close in time or reference the Notice and accompanying "Exhibit A" revealing the debtor's prior identity that he filed on September 27. Only the letters dated July 11 and July 13 bear the file stamp of the clerk's office. Therefore, the Court finds no such letter accompanied the Notice.

In this case, Kalmanson was fully aware of the circumstances giving rise to this Court's October 2004 Order and what this Court intended to accomplish thereby. Moreover, he was familiar with procedures to effectively seal confidential information to prevent public disclosure. Nevertheless, he disregarded this Court's directive that information regarding the debtor's prior identity remain confidential, which the Court simply cannot condone. Kalmanson's pro se status does not exempt him from compliance with the October 2004 Order.

### Disclosure of Confidential Information in Other Forums

The debtor also contends that Kalmanson improperly released confidential information in two other forums—before the Fifth District Court of Appeals in Florida and before a grievance committee managed by The Florida Bar. First, as to the filing before the Florida appellate court, Kalmanson is involved in litigation involving Richard Ducote, a Florida lawyer. Kalmanson is representing himself pro se in the appeal. In his brief filed with the Florida appellate court (Debtor's Ex. No. 5), in paragraphs 3 and 4, Kalmanson includes the following statements:

> 3.  Mr. Ductoe [sic] knowingly used a known criminal as his sole witness (Linda Nofziger) in the Florida Bar Hearing on or about March 22 & 23, 2005, with a current outstanding warrant for her arrest in Indiana.
> 4.  Ducote's sole witness (Linda Nofziger) in the Florida Bar Hearing on or about March 22 & 23, 2005, even fabricated her participation under the Federal Witness Program &/or the United States Marshall Witness Protection Program and subsequently admitted in open court, under oath that she was not under the protection of the Federal Witness Program &/or any other agency.

Although this filing does reference the debtor's contention as to which federal program was involved in her identity change and does reference an arrest warrant issued by the State of Indiana, the information does NOT disclose any confidential information about the debtor's past identity. It merely states that she had one. This is almost identical to the factual recitals contained in the October 2004 Order, which has been in the public record for over a year.

Second, as to the filing with The Florida Bar, on April 18, 2005, Kalmanson filed a grievance against the same lawyer, Richard L. Ducote. Paragraphs 3 and 4 of this grievance

contain exactly the same information contained in the appellate brief filed by Kalmanson. For similar reasons, the Court does not find that Kalmanson disclosed any protected information. The debtor has failed to prove Kalmanson committed any contemptuous act with these filings before other forums.

In conclusion, the Court finds that Kalmanson did intentionally flaunt the confidentiality provisions contained in the October 2004 Order when he filed his Initial Brief and the Notice. The Court recently (and apologetically belatedly) has sealed these two pleadings to lessen any further dissemination of the protected information. The Court further will partially grant the debtor's Motion for Contempt (Doc. No. 186).

However, because this matter is currently on appeal to the District Court, the Court will withhold entry of any award of damages, pending the result of the appeal. In the interim, Kalmanson is instructed to strictly follow the requirements of the October 2004 Order. If he desires to file any matter that may violate the order, he needs to file a Motion to File Pleading/Document under Seal BEFORE filing the possibly offending document. Further violations could result in the imposition of even greater damages and sanctions. A separate order consistent with this Memorandum Opinion shall be entered.

DONE and ORDERED in Orlando, Florida, this 29th day of March, 2006

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor:  Linda J. Nofziger, P.O. Box 998, Sorrento, FL  32776

Debtor's Attorney:  Arlys L. Buschner, Esquire, 1320 N. Semoran Blvd., Suite 104, Orlando, FL  32807

Creditor:  Mitchel Kalmanson, P.O. Box 94008, Maitland, FL  32794-0008

Creditor's Attorney:  David McFarlin, 1851 West Colonial Drive, Orlando, FL  32804

Trustee:  Carla Musselman, 1619 Druid Road, Maitland, FL  32751

Trustee's Attorney:  John H. Meininger, III, P.O. Box 1946, Orlando, FL  32802

United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL  32801