UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re )
)
LINDA NOFZIGER, ) Case No. 6:04-bk-09253-KSJ
) Chapter 7
      Debtor. )
)

MEMORANDUM OPINION OVERRULING OBJECTIONS
TO DEBTOR'S HOMESTEAD EXEMPTION
AND ALLOWING DEBTOR TO SELL PROPERTY

Both the Chapter 7 trustee, Carla Musselman, and a creditor, Mitchel Kalmanson, have objected (Doc. Nos. 237 and 248) (the "Objections) to the debtor's claim to exempt her home from claims of creditors (Doc. No. 236). The debtor opposes the Objections asserting that she is entitled to exempt her home from claims of creditors under the Florida Constitution (Doc. No. 250). The issue is whether the debtor can claim an exemption in either some or all of the value of the homestead she was awarded pursuant to a marital settlement agreement (the "MSA") and quit claim deed, both of which were executed after she filed this bankruptcy case. Upon consideration of the pleadings, evidence taken on April 4, 2006, arguments of the parties, and the law, the Court overrules the Objections. The debtor's interest in her homestead is entirely exempt from administration pursuant to Article X, Section 4(a)(1) of the Florida Constitution.[1]

---

[1] Article X, Section 4(a) of the Florida Constitution provides in relevant part as follows:

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead...

Fla. Const. art. X, §4(a)(1).

Typically, a long term Florida resident's ability to exempt the full value of his or her home from creditor claims under the broad provision of the Florida Constitution is not challenged unless an issue arises as to whether the debtor actually resided in the home. This case, however, presents several unusual facts which make the analysis more difficult. For example, the debtor's name did not appear on the warranty deed when the home was purchased in 2003. The debtor's former husband formally transferred title to her only after this bankruptcy case was filed and pursuant to the MSA between the parties. Moreover, the debtor initially neglected to claim any exemption in the homestead until approximately one and one half years after she filed her initial Schedule C.[2] Because the debtor's name did not appear on the deed to the homestead until *after* she filed this bankruptcy case and due to the debtor's belated claim of exemption, the objecting parties argue that the debtor had *no* interest in the homestead until post-petition when she received her former husband's interest in the homestead, and that either some, or all, of this interest constitutes property of the estate pursuant to Bankruptcy Code Section 541(a)(5)(B).[3]

A review of how the debtor acquired legal title to the homestead is merited. The debtor and her former husband, Arlynn Nofziger, were married in September 1996, and divorced approximately eight years later on November 9, 2004. (Debtor's Exh. No. 5). During the marriage, in February 2003, the couple purchased a house located at 24320 County Road 44A,

---

[2] When the debtor filed her initial schedules, on September 20, 2004, she listed the marital home on Schedule A as being jointly owned, having an "unknown" value, and encumbered by a secured claim of $343,000. (Kalmanson's Exh. No. 1.) She did not list or claim any exemption in the property on her initial Schedule C. (Kalmanson's Exh. No. 2.) However, she later, on February 8, 2006, filed an Amendment to Schedule C (Doc. No. 236) valuing the homestead at $330,000 and claiming the homestead as exempt pursuant to Article 10, Section 4(a)(1) of the Florida Constitution and Florida Statutes 222.01 and 222.02.

[3] Bankruptcy Code Section 541(a)(5)(B) provides that property of the estate includes:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date…as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree[.]

Eustis, Florida 32726.[4] (Debtor's Exh. No. 2.) The debtor moved into the home in March 2003. The couple separated sometime later in 2003, and Mr. Nofziger moved out of the home. Mrs. Nofziger, the debtor, however, has continuously resided in the home since March 2003.

When the couple purchased the homestead, a warranty deed was executed by the former owner of the house, Dyeann Dummer, conveying the property to "Arlynn Nofziger, a married man." (Debtor's Exh. No. 1.) The debtor's name, however, was *not* listed on the warranty deed.

The evidence is clear, however, that the home was acquired during the parties' marriage and that the home was acquired with the intent that it be owned by ***both*** the debtor and her then husband, Arlynn Nofiziger. The HUD settlement statement completed at the closing apparently listed the conveyance of the home to both Mr. and Mrs. Nofziger, irrespective of the deed listing only the husband's name. Moreover, both Mr. and Mrs. Nofziger signed two mortgages encumbering the property. Claim 1, filed by the first mortgage holder, Deutsche Bank National Trust, in the amount of $320,190.48, attaches a mortgage signed by the borrowers listed as "Arlynn Nofziger and Linda Nofziger, Husband and Wife." Similarly, Claim 6, filed by the seller, Dyeann Dummer, in the amount of $20,000, attached a mortgage again signed by the debtor and Mr. Nofziger, listing them as "husband and wife."

Even the pleadings filed in the later divorce action and the parties' actions in the divorce case indicate that the parties firmly believed the home was jointly owned. In the Petition for Dissolution of Marriage, the debtor alleged that the homestead was "owned by the parties as tenants by the entireties." (Debtor's Exh. No. 2, p. 7, ¶ 19(A).) In the Answer and Counter Petition for Dissolution of Marriage, Arlynn Nofziger admitted to this allegation. (Debtor's Exh. No. 3, p. 4, ¶ 19(a).) Additionally, in that same document, Mr. Nofziger described the homestead

---

[4] This property is more particularly described as: LOT 19 OF SUNNY ACRES SUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 24, PAGE(S) 28, OF THE PUBLIC RECORDS OF LAKE COUNTY, FLORIDA.

as being jointly owned by the couple. (Debtor's Exh. No. 3, p. 7, ¶ 3.) Eventually, the debtor and Mr. Nofziger settled all the issues between them. (Kalmanson Exh. No. 7.) In the MSA, the parties agreed that they jointly owned the home. Moreover, Mr. Nofziger agreed to transfer "all of his right, title, and interest in the marital home by Quit Claim Deed to the Wife." He did so in the quit-claim deed he executed on October 28, 2004, which was recorded on November 9, 2004. (Kalmanson Exh. No. 5.)[5]

Moreover, the debtor consistently acted as a legal owner of the property during this bankruptcy case. She initially filed this case as a Chapter 13 wage earner reorganization plan on August 12, 2004. In her initial schedules, the debtor listed her assumed joint ownership interest in the house, claimed the value was unknown, and disclosed the two mortgages encumbering the property at $343,000. In the debtor's original Chapter 13 plan (Doc. No. 15), she listed both mortgage holders as creditors and indicated she would be making mortgage payments on the home to the Chapter 13 trustee. She made many months of these payments before encountering additional financial difficulties and ultimately converting this case to a Chapter 7 liquidation case on January 10, 2006 (Doc. No. 220).

Based on these facts, the Court finds that the original warranty deed transferring legal title to only Arlynn Nofziger and not including his then wife, the debtor, was an error and a scrivener's mistake. Both parties have uniformly acknowledged that the property was to be jointly owned by them as husband and wife during their marriage, during their divorce, and during this bankruptcy.

---

[5] During closing arguments on the pending objections to exemptions, counsel for Kalmanson argued that the Nofzigers acted in bad faith in structuring the MSA to limit assets in the debtor's estate. The Court rejects this argument. The debtor has lived in her home since March 2003, had made all of the mortgage payments on the home (to the extent she was financially able to do so), and wanted to stay in the home after the divorce. The fact that she wanted to stay in the marital home following the divorce is expected and certainly constitutes no sort of ill-will or bad faith to her creditors.

In fact, however, the debtor did not obtain legal title to the home until October 28, 2004, when Arlynn Nofziger conveyed his interest to her in a quit claim deed. Even so, the home undisputedly was the parties' marital home. The debtor has resided continuously in the home since March 2003, believing she was a lawful joint owner. She certainly has an equitable interest, as a spouse, in the home, even prior to obtaining legal title to the home. Specifically, Florida Statute Section 61.075(7), concerning the equitable distribution of marital assets and liabilities, provides in relevant part that "[a]ll assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities." Furthermore, subsection (5)(a) of Florida Statute 61.075 defines "marital assets and liabilities" to include "[a]ssets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them."

Therefore, notwithstanding the fact that the debtor's name did not appear on the warranty deed executed when she and Mr. Nofziger acquired the homestead, Florida law affords the debtor the presumption that the homestead was a jointly owned marital asset. Accordingly, the debtor clearly had an equitable, if not a legal, interest in the homestead on the petition date. In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996) ("A bankruptcy estate consists of all property that the debtor owned at the time of the filing of the bankruptcy petition."); Doan v. Hudgins, 672 F.2d 831, 832 (11th Cir. 1982) (Bankruptcy Code Section 541 "defines the estate quite broadly as including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'"); In re Thomas, 883 F.2d 991, 995 (11th Cir. 1989). Ergo, the Court agrees with the objecting parties' position that the debtor's interest in the homestead is property of the debtor's bankruptcy estate, just as every other debtor's home is considered

Nofziger Memo Opinion Overruling Objections to Homestead Exemption- jo's rdln.doc / / Revised: 4/10/2006 12:02 PM
Page: 5 of 11

Printed: 4/10/2006

property of a debtor's estate. However, that does not answer the question as to whether a debtor can then claim the home as exempt or not.

In this case, the debtor's interest in her home, even in its inchoate state on the petition date, was a sufficient interest to allow her to claim the interest exempt under the Florida Constitution, at least under the unusual facts raised in this case where the deed mistakenly omitted her name. It is elementary that debtors are permitted to claim property of the estate as exempt from administration by the trustee for the benefit of their creditors, employing either federal or state exemptions. Englander, 95 F.3d at 1030 ("The Bankruptcy Code[] provides for exemption of property which would otherwise be subject to the administration of the bankruptcy estate, [however] Florida has opted out of the federal exemption scheme and makes its state statutory scheme available to its residents.") (citing 11 U.S.C. § 522(b); Fla. Stat. § 222.20). Here, the debtor, albeit belatedly,[6] claimed her homestead as exempt utilizing Florida law exemptions provided in Article 10, Section 4(a)(1) of the Florida Constitution and Florida Statutes 222.01 and 222.02.

Florida law zealously protects residents' homestead rights. The purpose of the homestead exemption is to protect and shelter the family and to provide the family a refuge from "the stresses and strains of misfortune." Butterworth v. Caggiano, 605 So.2d 56, (Fla. 1992) (citing Collins v. Collins, 150 Fla.374, 377, 7 So.2d 443, 444 (1942)); In re Kellogg, 197 F.3d 1116, 1120 (11th Cir. 1999) (citing Englander, 95 F.3d at 1031; Frase v. Branch, 362 So.2d 317, 318 (Fla.Dist.Ct.App.1978) ("The purpose of Florida's homestead provision is to protect families from destitution and want by preserving their homes.") As a matter of public policy, the Florida homestead exemption should be liberally construed in favor of the party seeking the exemption.

---

[6] No party has asserted that the debtor cannot file amended schedules to claim her home exempt. Indeed, Bankruptcy Rule 1009 (a) provides that schedules, include Schedule C listing exemptions, may be amended by the debtor "as a matter of course at any time before the case is closed."

In re Pettit, 231 B.R. 101, 102 (Bankr. M.D. Fla. 1999) (*citing* In re Brown, 165 B.R. 512, 514 (Bankr.M.D.Fla.1994)). A claimed homestead exemption enjoys a presumption of validity, and the party challenging the exemption bears the burden of proving that the party claiming the exemption is not entitled to the exemption. In re Pettit at 102 (*citing* In re Crump, 2 B.R. 222, 223 (Bankr.S.D.Fla.1980)). Therefore, homestead is protected from all creditor claims unless the claim arises from one of the listed exceptions for the accrual of real estate taxes or the purchase and improvement of the homestead property.[7]

Here, the debtor properly listed her homestead as property of the estate when she filed her initial schedules on September 20, 2004. (Kalmanson's Exh. No. 1.) She made no attempt to conceal her interest in this property, rather, she simply failed to claim the property as exempt until she later filed her Amended Schedule C. Debtor's counsel conceded at the hearing held in this matter that it was her mistake that the debtor did not claim an earlier exemption in her homestead. Accordingly, because the homestead was acquired by the debtor and Mr. Nofziger during their marriage, because of the error on the original warranty deed, because of the parties' later consistent actions reflecting joint ownership of the home, and because of the debtor's equitable interest in the marital home provided by Florida Statutes, the Court holds that the debtor held an interest in the homestead pursuant to the laws of Florida on the date she filed this bankruptcy case. Accordingly, the debtor is entitled to claim the full value of the home exempt from the claims of her creditors.

The objecting parties next argue, however, that, even if the debtor can claim an exempt interest in the homestead on the petition date, she *cannot* exempt the interest she received from

---

[7] The Eleventh Circuit Court of Appeals certified to the Florida Supreme Court the question as to whether a debtor could exempt his Florida homestead where the debtor acquired homestead with non-exempt assets with actual intent to hinder, delay or defraud creditors. Havoco of America, Ltd. v. Hill (In re Havoco), 197 F.3d 1135 (11th Cir. 1999). Answering in the affirmative, the Florida Supreme Court held, "the transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is not one of the three exceptions to the homestead exemption provided in article x, section 4." In re Havoco, 790 So.2d 1018, 1028 (Fla. 2001).

Mr. Nofziger's post-petition quit claim deed. In support of this argument, the objecting parties cite Cordova v. Mayer, (In re Cordova), 73 F.3d 38 (4th Cir. 1996).[8] Cordova, however, is distinguishable.

In Cordova, the debtor was also in the process of a divorce. Before a final decree had been entered in the divorce case, Ms. Cordova filed a Chapter 7 petition and, in the schedules, claimed her home exempt pursuant to the legal doctrine of tenancy by the entireties as allowed by Bankruptcy Code Section 522(b)(2)(B). Cordova, 73 F.3d at 39. Approximately five months after she filed her Chapter 7 case, the final decree was entered in her divorce case, which, under applicable law, "automatically extinguished the tenancy by the entirety and all contingent rights in the home, including the right of survivorship, by operation of law." Id. (citing Va. Code Ann. § 20-111 (Michie 1995)). Indeed, the debtor did not dispute that the entry of the divorce decree extinguished the tenancy by the entireties exemption under Virginia law. Cordova, 73 F.3d at 40.

Pursuant to the divorce decree, Ms. Cordova was awarded sole ownership of the fee simple interest in the marital home. The Chapter 7 trustee then objected to Ms. Cordova's claimed entireties exemption in the home arguing that this exemption was extinguished upon the entry of the final divorce decree, and, because the divorce occurred within 180 days of the petition date, "that the fee simple interest that Cordova then held in the home had become property of the bankruptcy estate through § 541(a)(5)(B) of the bankruptcy code." Cordova, 73 F.3d at 39.

---

[8] Subsequent to the hearing, Mr. Kalmanson filed a Notice of Supplemental Authority in connection with his objection to the debtor's claim of exemptions (Doc. No. 280), citing this Court's recent decision in In re Hoyo, ___ B.R. ___, 2006 WL 787139 (Bankr. M.D. Fla 2006). In Hoyo, this Court ruled that non-exempt marital property was subject to administration by the Chapter 7 trustee of the debtor's bankruptcy estate where no final judgment approving the debtor's MSA had been entered as of the petition date. In a Chapter 7 bankruptcy, estate property vests in the Chapter 7 trustee. However, the instant case was filed as a Chapter 13 case, vesting all property of the estate in the debtor pursuant to 11 U.S.C. 1306(b), and the MSA became final prior to the time the debtor converted this case to a case under Chapter 7. Therefore, the Court finds Hoyo inapposite here.

Nofziger Memo Opinion Overruling Objections to Homestead Exemption- jo's rdln.doc / / Revised: 4/10/2006 12:02 PM          Printed: 4/10/2006
Page: 8 of 11

In response, Ms. Cordova argued that the "exempt status of a debtor's assets is determined on the date the bankruptcy petition is filed and that post-petition events do not affect the applicability of the exemption... [and] that she did not acquire a new 'interest in property' under § 541(a)(5)(B) as a result of the divorce decree because she owned a fee simple interest in the home both before and after the divorce." Cordova, 73 F.3d at 39. In other words, the divorce decree awarding her sole ownership of the property "did not produce a new 'interest in property' that could become part of the bankruptcy estate" and subject to administration by the trustee for the benefit of her creditors. Cordova, 73 F.3d at 39-40.

The United States Court of Appeals for the Fourth Circuit declined to accept Ms. Cordova's position, reasoning instead that the post-petition entry of the divorce decree terminating co-ownership of the home rendered the tenancy by the entireties exemption inapplicable. Cordova, 73 F.3d at 41. Adopting a 'broad and all-embracing' definition of the term "interest," as contemplated by Bankruptcy Code Section 541, the Fourth Circuit Court concluded "that Cordova's sole ownership of a fee simple interest is a separate property interest distinct from the tenancy-by-the-entirety interest that she previously held... [based on the] greater variety of rights vested in Cordova as the sole owner of the property." Cordova, 73 F.3d at 42 (citing Sachs v. Ryan (In re Ryan), 15 B.R. 514, 517 (Bankr.D.Md.1981); 4 COLLIER ON BANKRUPTCY ¶ 541.06, at p. 541-29 (15th ed.1995) ("noting 'that the underlying theory of section 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced'"). On this reasoning, the Fourth Circuit affirmed the decisions of the lower courts sustaining the Chapter 7 trustee's objection to the claimed exemption.

Several facts make Cordova distinguishable from the case here. In Cordova, the debtor relied solely on a tenancy by the entireties exemption in her homestead to support her claim for exemption. Cordova, 73 F.3d at 39. After her marriage was dissolved pursuant to the entry of the

Nofziger Memo Opinion Overruling Objections to Homestead Exemption- jo's rdln.doc / / Revised: 4/10/2006 12:02 PM
Page: 9 of 11

Printed: 4/10/2006

final divorce decree and in response to the trustee's objection to her claimed entireties exemption, Ms. Cordova simply reasserted her entitlement to that same exemption.

Here, the debtor, in her Amended Schedule C, relies upon Article X, Section §4(a) of the Florida Constitution, which grants a homestead exemption to all natural persons, married or unmarried. The debtor's interest in her home was subject to exemption on the petition date and her later receipt of the quit-claim deed from her former husband did nothing to expand her estate, other than to clarify that she is the legal title holder to the property and that he no longer claims any legal interest in the home. The home was subject to exemption by the debtor on the petition date, on the date the debtor received the quit clam deed, and on all of the other dates this bankruptcy has been pending. Mr. Nofziger's actions did nothing to increase or reduce the debtor's estate. No creditor has been harmed. The trustee gained nothing new to administer.

Accordingly, the Court overrules the Objections (Doc. Nos. 237 and 248). The debtor is entitled to claim her home exempt, to proceed with a pending sale of her home, and to retain the proceeds for reinvestment in a new home elsewhere. The funds are not subject to administration in this Chapter 7 case. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED this 10th day of April, 2006.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Nofziger Memo Opinion Overruling Objections to Homestead Exemption- jo's rdln.doc / / Revised: 4/10/2006 12:02 PM
Page: 10 of 11

Printed: 4/10/2006

Copies provided to:

Debtor: Linda J. Nofziger, 24320 County Road 44A, Eustis, FL  32726
Debtor's Counsel:  Arlys L. Buschner, 1320 North Semoran Blvd., Suite 104, Orlando, FL 32807
Creditor's Counsel:  David R. McFarlin, Esquire, 1851 West Colonial Drive, Orlando, FL  32804
Carla Musselman, Trustee, 1619 Druid Road, Maitland, FL  32751
Trustee's Counsel:  John H. Meininger, III, P.O. Box 1946, Orlando, FL  32802-1946
United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL  32801

Nofziger Memo Opinion Overruling Objections to Homestead Exemption- jo's rdln.doc / / Revised: 4/10/2006 12:02 PM
Page: 11 of 11

Printed: 4/10/2006