# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LINDA J. NOFZIGER, | ) | Case No.  6:04-bk-09253-KSJ |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| MITCHEL KALMANSON, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding 6:06-ap-35 |
| v. | ) | |
| | ) | |
| LINDA J. NOFZIGER, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION DENYING
## KALMANSON'S MOTIONS REQUESTING A NEW TRIAL
## OR REHEARING AND REQUEST FOR RECUSAL

Mitchel Kalmanson filed four similar renewed[1] motions[2] (Adv. Proc. Doc. Nos. 178 and 179,

Main Case Doc. Nos. 818 and 822) again asking the Court to recuse itself, set aside every order it

has entered concerning him, and requesting a new trial on the myriad of issues decided by the Court

in its Memorandum Opinion (Adv. Proc. Doc. No. 146, Main Case Doc. No. 809) entered following

a five day trial. After reciting the same arguments previously raised and denied, Kalmanson raises

one new argument—he is entitled to a new trial because the Court received undisclosed *ex-parte*

communications prior to issuing its ruling.  Because no such *ex-parte* communications occurred, the

Court should summarily deny the motion.  The standard for recusal, however, requires the Court

---

[1] Kalmanson has requested recusal or rehearing of issues in this case on multiple occasions, including:  Adversary Proceeding  Doc. No. 156; Main Case Doc. Nos. 814, 635, 285, 158, 157, 156, and 144.

[2] Two of Kalmanson's motions are titled:  "Plaintiff's Motion for a New Full Evidentiary Trial and Rehearing and Motion to Declare a Mis-trial [sic] of December 10-14, 2007 and Motion for Recusal of Judge Jenneman [sic] (A Judicial Terrorists) [sic] Due to Newly Discovered Evidence Including Obstruction of Justice by Judge Jenneman [sic]." (Adv. Proc. Doc. No. 178; Main Case Doc. No. 818).  He filed similar motions titled:  "Plaintiff's Motion for Recusal of Judge Jenneman [sic] Due to Newly Discovered Evidence Including Obstruction of Justice by Judge Jennemann [sic]." (Adv. Proc. Doc. No. 179; Main Case Doc. No. 822).

additionally to consider what a reasonable person objectively viewing the allegations and with full knowledge of the facts would conclude.

Recusal of a federal bankruptcy judge is addressed in Bankruptcy Rule 5004, which, in turn, provides that disqualification decisions are governed by Section 455 of Title 28 of the United States Code.  Section 455(a) requires a bankruptcy judge to disqualify him or herself if the judge's impartiality "might reasonably be questioned."   The party seeking to recuse a judge bears the burden of proving that disqualification is warranted by clear and convincing evidence.  In re Johns-Manville Corp., 43 B.R. 765 (D.C.N.Y. 1984) (citing United States v. IBM Corp., 618 F.2d 923, 931 (2d Cir. 1980)).

In the Eleventh Circuit, "[t]he test for determining whether a judge should disqualify himself [or herself] under section 455(a) is whether a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned."  Bryne v. Nezhat, 261 F.3d 1075, 1101 (11th Cir. 2001).  The issue is whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Id. (internal quotation and citation omitted.)

Here, Kalmanson asserts this Court is biased against him because of alleged *ex-parte* communications.  In order to justify recusal, Kalmanson must clearly and convincingly demonstrate that improper, undisclosed communications occurred and that an objective third party would conclude that the communications would sufficiently affect the Court's partiality so that she could not act in the case.  Kalmanson has failed to meet this burden.

Kalmanson bases his argument for recusal relying upon testimony recently elicited in a separate state court case pending in Seminole County, Florida.[3]   The parties involved in that litigation are similar to those involved in this bankruptcy case—Mitchel Kalmanson and his ex-wife, Donna Robinson King; the debtor, Linda Nofziger; a former husband of the debtor, Arlynn Nofziger;

---

[3] The case is styled as *Mitchel Kalmanson v. Linda J. Nofziger*, 03-CA-2679-16-L.

and Nancy Adams, a woman acquainted with all of the parties.[4]  On August 28, September 8, and

September 9, 2008, the Seminole County Circuit Court heard testimony relating to the request by

Kalmanson to enjoin the debtor from filing any more civil or criminal complaints against him.

Kalmanson attached the transcripts from these hearings and copies of some of the admitted exhibits

to the instant motions (Adv. Proc. Doc. No. 178, Exhibits A, B, C, and G). Based on the testimony

given and exhibits introduced at these hearings, Kalmanson now avers that this Court received

undisclosed negative communications from two sources:  (1) Eva Marie Blatchford, a detective from

the Seminole County Sheriff's Office, and (2) Cynthia Hawkins, a former Assistant United States

Attorney.

First, Kalmanson argues that Detective Blatchford provided information to this Court about a

separate criminal investigation she was conducting against Kalmanson sometime between the trial,

held in December 2007, and the written ruling in this bankruptcy case, entered on June 2, 2008

(Adv. Proc. Doc. No. 178, p. 9, ¶ h). Kalmanson's primary argument is based on largely undated,

handwritten notes kept by Detective Blatchford during her investigation.  The notes contain these

two references:   "Call Federal District Court re: Linda Nofziger Case" (Adv. Proc. Doc. No. 178, p.

4, ¶ ii); "Don't Call judges assistant" [sic] (Adv. Proc. Doc. No. 178, p. 4, ¶ iii).  Kalmanson also

contends that this Court mysteriously obtained recordings from "controlled calls" facilitated by

Detective Blatchford between Arlynn Nofziger and Nancy Adams (Adv. Proc. Doc. No. 178, p. 3, ¶

(4)(c); p. 4, ¶ (iv)), causing the  Court to assign less weight to Arlynn Nofziger's testimony (Adv.

Proc. Doc. No. 178, p. 9, ¶ i).

Nothing, however, in Detective Blatchford's testimony supports Kalmanson's conclusions.

On August 28, 2008, Detective Blatchford testified that she spoke with law enforcement people in

Lake and Orange Counties, Florida, to a FBI agent, and possibly to someone in the Florida Statewide

Prosecutor's office.  She actually met with Linda Nofziger, Nancy Adams, Donna King, and Arlynn

---

[4] More information about the relationship between these parties is included in the Court's Memorandum Opinion (Adv. Proc. Doc. No. 146; Main Case Doc. No. 809).

Nofziger.  Although Detective Blatchford conducted a very thorough investigation and talked with numerous people, no credible evidence indicates that she communicated at any time with this Court to discuss her investigation, which she later dismissed for lack of jurisdiction.  Detective Blatchford simply had no *ex-parte* communication with the Court.

Second, Kalmanson asserts that Cynthia Hawkins, a former Assistant United States Attorney, contacted the Court "with direct exparte [sic] communication in an attempt to use persuasive discourse as an outside influence to allege various criminal acts and accusations by the various judicial terrorist(s) against Kalmanson in [his litigation against Nofziger and his former wife, Donna King, in Seminole County]." (Adv. Proc. Doc. No. 178, p.1-2; p. 9, ¶¶  j, k). Kalmanson bases his allegation that Hawkins secretly informed the Court about ongoing criminal investigations against him based upon a single footnote contained in this Court's Memorandum Opinion.  The relevant Footnote 19 provided, "The *debtor* [not Ms. Hawkins] makes many other allegations of wrong-doing by Kalmanson….These claims appear to assert possible criminal violations…and are well beyond the limited jurisdiction of a bankruptcy court to consider." (Emphasis added) (Adv. Proc. Doc. No. 146; Main Case Doc. No. 809).  Obviously, this footnote does not reference any pending federal criminal investigation against Kalmanson disclosed by Ms. Hawkins.   Rather, the footnote alludes to the debtor's practice of lodging criminal complaints against Kalmanson in her pleadings.

 The Court, however, was aware of the potentiality of a federal criminal investigation because Ms. Hawkins disclosed the investigation during a hearing held on July 19, 2007.  Ms. Hawkins had filed a Motion for Protective Order on behalf of the United States of America raising various discovery concerns arising from the on-going criminal investigation (Main Case Doc. No. 554).  She explained these concerns during the hearing.  Kalmanson was represented by his attorney, David McFarlin, who fully participated in this hearing.  The Motion for Protective Order ultimately was granted (Main Case Doc. No. 566).  Therefore, Ms. Hawkins did not disclose the criminal

investigation in any furtive, *ex-parte* manner.  She disclosed it months before the trial in open court with Kalmanson's attorney present.

Upon review, *none* of the voluminous documents Kalmanson piled upon this Court when he filed these motions to recuse contain <u>any</u> support for his conclusion that the Court based its Opinion on *ex-parte* contacts rather than on the testimony and evidence admitted during the five-day trial. Kalmanson offers absolutely no proof, beyond wholly unsupported allegations, that any improper communication occurred between the Court and Detective Blatchford or Ms. Hawkins. Nor would any objective third party after fully understanding the evidence conclude that any improper communications occurred or that the Court was biased against Kalmanson as a result.  Kalmanson's motions to recuse are denied.

Kalmanson also has failed to demonstrate any reason the Court should reconsider its rulings in the Opinion.[5] Only three reasons suffice for reconsideration of a prior ruling: (1) a change in controlling law; (2) newly discovered evidence; or (3) a clear error of law or fact that results in manifest injustice.  <u>In re Kellogg</u>, 197 F.3d 1116 (11th Cir. 1999); <u>In re Barber</u>, 318 B.R. 921, 924 (Bankr. M.D. Ga. 2004); <u>In re Investors Florida Aggressive Growth Fund, Ltd.</u>, 168 B.R. 760, 768 (Bankr. N.D. Fla. 1994). Kalmanson did not show a change in controlling law or any clear error of law or fact. He continues to dispute the weight this Court attributed to Mr. Nofziger's sworn statement, but such determinations are the exclusive province of the finder of fact. <u>U.S. v. Calderon</u>, 127 F.3d 1314 (11th Cir. 1997). None of the voluminous materials Kalmanson submitted in support of the motions for rehearing point to any error of law or fact or constitute "newly discovered" evidence.  Kalmanson's motions seeking rehearing are denied.

In summary, the Court concludes that these motions are unsupported and frivolous.  The motions are not grounded in fact or reason and teeter upon, if not toppling over into, the realm of bad faith. The Court has ruled against Kalmanson.  Dissatisfied litigants can appeal; they cannot continue

---

[5]  The Court previously articulated the standard for reconsideration in a prior ruling (Adv. Proc. Doc. No. 164) and declines to repeat the standard here.

to file frivolous motions, which simply waste judicial resources and, if filed in the future, could merit sanctions.

A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED this 21st day of November, 2008.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor:  Linda J. Nofziger, #054, PO Box 2465, Harrisburg, PA  17105-2465

Trustee:  Carla Musselman, 1619 Druid Road, Maitland, FL  32751

Trustee's Attorney:  John H. Meininger, III, P.O. Box 1946, Orlando, FL  32802

United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL  32801

Plaintiff: Mitchel Kalmanson, P.O. Box 940008, Maitland, FL  32784